**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| Cincinnati Insurance Company, | ) | Case No. 4:09-CV-1379-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER ADDRESSING HARLEYSVILLE** |
| | ) | **MUTUAL INSURANCE COMPANY'S** |
| Crossmann Communities of North | ) | **MOTION FOR SUMMARY JUDGMENT** |
| Carolina, Inc.; Crossmann Communities, | ) | **AND BEAZER HOMES' MOTION FOR** |
| Inc.; Beazer Homes Investment | ) | **PARTIAL SUMMARY JUDGMENT** |
| Corporation, True Blue Golf & Racquet | ) | **REGARDING HARLEYSVILLE'S** |
| Resort Homeowners' Association, Inc., | ) | **DUTY TO DEFEND** |
| and Beazer Homes Corp., | ) | |
| | ) | |
| | ) | |
| Defendants. | | |
| Crossmann Communities of North | ) | |
| Carolina, Inc.; Crossmann Communities, | ) | |
| Inc.; Beazer Homes Investment | ) | |
| Corporation; and Beazer Homes Corp., | ) | |
| | ) | |
| Third-Party Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Harleysville Mutual Insurance Company, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| Harleysville Mutual Insurance Company, | ) | |
| | ) | |
| Fourth-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Indiana Insurance Company, | ) | |
| Massachusetts Bay Insurance Company, | ) | |
| Regent Insurance Company, Illinois | ) | |
| Union Insurance Company, Liberty | ) | |
| Mutual Insurance Company, Zurich | ) | |
| American Insurance Company, | ) | |
| | ) | |
| Fourth-Party Defendants. | ) | |

Before the Court are Third-Party Defendant Harleysville Mutual Insurance Company's Motion for Summary Judgment on All Claims (Entry Number 187) and Defendant/Third-Party Plaintiff Beazer's Motion for Summary Judgment on "Duty to Defend" Claims Against Harleysville (Entry Number 186). The Court has reviewed the Parties' briefs and related submissions, and heard arguments from counsel on September 11, 2012.[1] For the reasons set forth below, the Court DENIES Harleysville's Motion and GRANTS Beazer's Motion IN PART AND DENIES IN PART.

I.     **RELEVANT FACTS**

   A.     **Background**

This insurance coverage action was filed in May 2009 by Plaintiff Cincinnati Insurance Company against Crossmann Communities of North Carolina, Inc. ("CCNC"), Crossmann Communities, Inc. ("CCI"), and Beazer Homes Investment Corp. ("BHIC"). Cincinnati sought, among other things, a declaration that it owed no coverage obligations under its insurance policies for defense costs or indemnity payments for the construction-related property damage case filed against Beazer Homes Corp., Inc. and captioned *True Blue Golf & Racquet Resort HOA v. Beazer Homes Corp. Inc.*, Case No. 2009-CP-22-0912 (the "*True Blue lawsuit*"). The underlying *True Blue lawsuit* was also filed in 2009, and was scheduled for trial in December 2012. (The Court has not been advised whether the trial actually took place.)

The amended complaint in the *True Blue lawsuit* was filed against Beazer Homes Corp. Inc. and alleges that Beazer Homes Corp., Inc. is the successor-in-interest by merger to CCNC. (Entry Number 187-7, at ¶ 3.) The amended complaint alleges numerous causes of action against the defendants including negligent construction, breach of warranty, and other claims. (*Id.*, ¶ 15-48) Among other things, the *True Blue lawsuit* alleges that as a result of the

---

[1] The case was stayed pending unsuccessful mediation of the underlying state court action.

defendants' negligence, "substantial parts of the buildings have been and will be continuously and repeatedly exposed to leaks causing moisture infiltration resulting in mold, rot, deterioration and degradation of the buildings." (*Id.*, ¶ 13.) The water-related damages described in the *True Blue lawsuit* are alleged to have occurred continuously to the buildings since construction on the buildings was completed. (*Id.*) The *True Blue lawsuit* seeks, among other things, compensatory damages from the defendants to repair the property damage to the buildings. (*Id.*, ¶ 48.)

### B.    The Beazer-Related Entities

In light of issues raised in the Parties' motions before the Court, a short discussion of the Beazer entities' corporate history is warranted. Pinehurst Builders, Inc. ("Pinehurst") was a company in the business of real estate construction. In May 1998, Pinehurst was merged into CCNC, which was at the time a subsidiary of its parent company, Crossmann Communities, Inc. By Agreement and Plan of Merger dated January 29, 2002, parent company Crossmann Communities, Inc. and its wholly-owned subsidiaries, including CCNC, merged with Beazer Homes Investment Corp. (Crossmann Communities Inc., 2002 Form 8-K, ECF No. 195-10, A-13 through A-14.) In addition to this merger at the parent company level, the record also shows that on January 1, 2005, CCNC merged into Beazer Homes Corp. ("BHC"). (Articles of Merger of Crossmann Communities of North Carolina, Inc. into Beazer Homes Corp., ECF No. 224-2.)

Pinehurst Builders Inc., CCNC, and Beazer were all engaged in the business of real estate construction. Pinehurst Builders and CCNC (after the Crossmann acquisition of Pinehurst in 1998) acted as the general contractor at the True Blue Project.[2]

---

[2]    As used herein, the term "Beazer" refers collectively to Beazer Homes Investment Corp., Beazer Homes Corp., and Beazer Homes Corp., Inc., unless otherwise indicated by the Court.

C.     **The Harleysville CGL Policy**

The motions before the Court concern the obligations, if any, of Harleysville to defend Beazer in, and reimburse past defense costs incurred by Beazer for, the *True Blue lawsuit*. Harleysville originally sold to Pinehurst a comprehensive general liability insurance policy that was renewed a number of times and was effective from 1993 through August 29, 1998, with policy number CB 9A 5801 (the "Harleysville Policy").  CCNC, d/b/a Pinehurst Builders, was added as a specifically listed insured on the Harleysville Policy on June 26, 1998.  (Fourth Party Complaint of Harleysville, ECF No. 40, at ¶ 20.)  The policy was renewed for the policy period beginning on July 29, 1998 but was cancelled by the insured on August 29, 1998. The Harleysville Policy has an "each occurrence" limit of $1 million per annual policy period or portion thereof, and a "general aggregate" limit of $2 million per policy period.  Harleysville is obligated under the Policy to "pay those sums that [the insured] becomes legally obligated to pay as damages because of. . . 'property damage' . . ." caused by an "occurrence."  (Harleysville CGL Policy, § II.A.1, ECF No. 153-6, at 37.)  The Policy also provides that Harleysville has the "duty to defend" any 'suit' seeking those damages."  (*Id*.)  "Property damage" is defined in the Harleysville Policy as "[p]hysical injury to tangible property, including all resulting loss of use of that property," and "loss of use of tangible property that is not physically injured."  (*Id*. at 48.) "Occurrence" is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (*Id*.)

A number of the terms in the Harleysville Policy at issue in the Parties' motions were the subject of earlier insurance coverage litigation between Crossmann/Beazer and Harleysville, arising from different underlying lawsuits.  *Crossmann Communities of North Carolina, Inc. v. Harleysville Mutual Insurance Co.*, 717 S.E.2d 589 (S.C. 2011) ("*Crossmann II*").  *See* ECF No. 27-1, Order of state circuit judge in *Crossmann II*.  In *Crossmann II*, the South Carolina Supreme

4

Court affirmed the trial court's finding that certain water-related damage, to buildings for which Crossmann and later Beazer acted as developer and general contractor, triggered coverage under the same Harleysville Policy at issue in this case because such property damage was caused by an "occurrence," as that term is defined in the Policy. *Id*. at 47.[3] The Supreme Court also held that each insurer whose duty to indemnify was triggered by property damage caused by an occurrence was responsible for the costs to repair the damage that occurred during their policy periods. *Id*. at 63 ("[T]he proper method for allocating damages in a progressive property damage case is to assign each triggered insurer a pro rata portion of the loss based on that insurer's time on the risk."). *Crossmann II* addressed only Harleysville's duty to indemnify its policyholder, and did not deal with the separate question of the scope of Harleysville's duty to defend.

### D.     The Parties' Dealings Related To The *True Blue lawsuit*

In June 2009, the complaint in the *True Blue lawsuit* was filed naming Beazer Homes Corp., Inc. as a defendant (ECF No. 187-6.) Shortly thereafter, Beazer sent a copy of that complaint to Harleysville and requested that Harleysville defend Beazer in the case. (ECF No. 186-5, at 3.) Harleysville responded to Beazer's notice of the *True Blue lawsuit* stating that it was "willing to defend Beazer under [a] reservation of rights." (D. Harris Aug. 24, 2009 Reservation of Rights Ltr., ECF No. 187-4, at 12.) Specifically, Harleysville stated that it would defend Beazer because "there is at least a potential for coverage for the damages being alleged against Beazer Homes as a successor of Pinehurst Builders as the general contractor." (*Id*.) Harleysville further stated, however, that because only thirteen of the eighty-four  buildings at

---

[3]     The Supreme Court addressed the issue of the allocation of indemnity payments among multiple triggered insurers in progressive damages cases.  The Supreme Court overruled the trial court and its own previous decision in *Century Indemnity Co. v. Golden Hills Builders, Inc.*, 561 S.E.2d 355 (S.C. 2002), and changed the allocation rule for an insurance company's indemnity obligation from the joint-and-several method to the time-on-the-risk method. *Id*. at 50.

the True Blue Project were completed during the period that the Harleysville Policy was in effect, Harleysville would not defend all claims against Beazer in the *True Blue lawsuit*, but rather would pay only a portion of the costs to defend the suit. (*Id.*, at 12-13.)

On September 23, 2009, Beazer informed Harleysville that Beazer had selected the firm of Elmore & Wall (now known as Elmore Goldsmith) to defend it in the *True Blue lawsuit* and demanded that Harleysville honor its duty to defend Beazer by paying the invoices submitted by Elmore & Wall to defend all claims in the *True Blue lawsuit*. (September 23, 2009 Letter from King & Spalding to Harleysville, ECF No. 186-6.) By letter dated October 28, 2009, Harleysville advised Beazer that it "disagrees with [Beazer's] assertion that 'Harleysville must defend the entire [*True Blue*] case.'" (ECF No. 187-5, at 5.) In that same letter, Harleysville advised Beazer that its "defense efforts will be limited to those buildings [Building Nos. 1-13 out of 84] constructed by Pinehurst Builders, Inc. or by Crossmann Communities of NC, Inc. d/b/a Pinehurst Builders." (*Id.*)

The *True Blue lawsuit* was scheduled for trial in December 2012. (The Court has not been advised as to whether the trial occurred.) The Elmore Goldsmith law firm has represented Beazer in defending the *True Blue lawsuit*, while counsel appointed by Harleysville with respect to the Building One through Thirteen claims has participated in Beazer's defense of claims related to those Buildings.

After being served with Cincinnati's Complaint in the action pending here, Beazer filed a Third-Party Complaint against Harleysville. (Beazer's Third-Party Complaint Against Harleysville Mut. Ins. Co., ECF No. 27.) In its Third-Party Complaint, Beazer alleged that, among other things, the Harleysville Policy imposed on Harleysville an immediate duty to defend Beazer against all claims in the *True Blue lawsuit* and that Harleysville must reimburse Beazer for all past, present, and future defense costs incurred.

6

Harleysville answered Beazer's Third-Party Complaint by asserting numerous defenses, including that its duty to defend Beazer was "limited to any liability of Beazer Homes. . . occurring prior to the cancellations of the policies issued by Harleysville. . ." (Answer of Harleysville Mut. Ins. Co. to The Beazer Defendants' Third-Party Complaint, Counterclaim and Crossclaim, ECF No. 37, at 20.)  Further, Harleysville asserted that "[t]he damage alleged in the True Blue lawsuit did not occur within the policy period of any of the insurance policies issued by Harleysville." (*Id*. at 22.)[4]

## II.   THE PARTIES' MOTIONS

### A.   Harleysville's Motion

In its Motion for Summary Judgment, Harleysville contends that because its Policy listed Pinehurst Builders and CCNC as the "Named Insureds," and because the named defendant in the underlying *True Blue lawsuit* was Beazer Homes Corp. Inc., Harleysville owes no coverage obligation to Beazer for the *True Blue lawsuit*. Harleysville's argument is based primarily on the contention that the Policy contains an anti-assignment clause, and that Harleysville never consented to assignment of its Policy to any Beazer entity.  Harleysville also contends that even if Beazer Homes Corp. or another Beazer entity is entitled to claim coverage under the Harleysville Policy, the Policy does not cover the claims asserted in the *True Blue lawsuit* because there is no allegation of "property damage" caused by an "occurrence" during the period of the Harleysville Policy, and because the "impaired property" exclusion in the Policy bars coverage.

Harleysville argues in the alternative that even if it has a duty to defend Beazer in the *True Blue lawsuit*, Harleysville need only defend Beazer for those claims related solely to

---

[4]     Harleysville filed a Fourth-Party Complaint against other insurers that Harleysville contends may owe coverage obligations to Beazer.  This Court addresses the claims by Harleysville against the Fourth-Party Defendants in another order.

property damage that occurred at Buildings One through Thirteen at the True Blue Project, because those were the only buildings that were constructed and sold during the Harleysville Policy period.  Harleysville contends that it properly discharged any duty to defend Beazer because it retained and has paid the Young Clement law firm to defend Beazer solely against the Building One through Thirteen claims in the *True Blue lawsuit*.  Finally, Harleysville claims that, if it has any defense obligation for the *True Blue lawsuit*, the defense costs should be allocated among all the insurers that may also have a duty to defend Beazer using a *pro rata*, time-on-risk methodology.[5]

### B.    Beazer's Motion

Beazer claims that because Beazer Homes Investment Corp. is the corporate successor by merger to Crossmann Communities, Inc., and its subsidiaries, including CCNC, the rights enjoyed by CCNC under the Harleysville Policy were transferred by operation of law to Beazer, and that Beazer in essence "stands in the shoes" of CCNC for purposes of claiming coverage from Harleysville for the *True Blue lawsuit*.  Beazer also relies upon records from the North Carolina Secretary of State's office showing that, effective January 1, 2005, CCNC was merged into Beazer Homes Corp., and that even if CCNC's rights under the Harleysville Policy did not automatically vest in Beazer pursuant to the parent-level merger, CCNC's rights vested in Beazer Homes Corp., by virtue of its 2005 merger with CCNC.

Beazer also contends that the allegations in the *True Blue lawsuit*, and other evidence submitted with Beazer's Motion, show that there is at least the potential for coverage under the Harleysville Policy, which triggers Harleysville's duty to defend.  Beazer further contends that South Carolina law requires Harleysville to defend Beazer against all claims in the *True Blue*

---

[5] This argument of Harleysville is addressed in and relevant to the Court's Order dealing with the motion for summary judgment on the Fourth Party claims.

*lawsuit*, even those claims that are not covered under the Harleysville Policy. Beazer contends that Harleysville's duty to defend Beazer is "personal," "several," and "indivisible" and, as such, Harleysville must pay all the past and future defense costs for the *True Blue lawsuit*. Beazer also contends that Harleysville has no right of contribution against any other insurer that may also have a duty to defend. Beazer contends that because Harleysville breached its duty to defend in 2009 by limiting its defense efforts solely to claims related to Buildings One through Thirteen at the True Blue project, Beazer is entitled to a declaration that Harleysville has breached its duty to defend Beazer against all claims in the *True Blue lawsuit,* and also a declaration that Harleysville must reimburse Beazer for all past attorneys' fees and costs incurred to defend the *True Blue lawsuit*.

## III.  DISCUSSION

The Harleysville Motion raises many of the same issues addressed in the Beazer Motion, and the Parties' respective opposition briefs fully address all issues in the Motions. Therefore, the Court in this Order will not address each of the Motions separately, but instead will address the substantive issues raised by the Motions and, in doing so, set forth the Court's the rulings on each of the Motions.

### A.  Harleysville's "Named Insured" Argument

Harleysville claims that it owes no coverage obligations to Beazer Homes Corp., Beazer Homes Investment Corp., or any other Beazer entity because (a) the Named Insureds on the Harleysville Policy -- CCNC and Pinehurst Builders -- are not defendants in the *True Blue* lawsuit; (b) the Harleysville Policy contains an anti-assignment clause that precludes the transfer of any rights under the Harleysville Policy to any entity without Harleysville's prior written consent; and (c) neither CCNC nor Beazer asked for, nor were they granted, Harleysville's consent to an assignment of policy rights to any Beazer entity.

Beazer counters that, because Beazer acquired CCNC through several mergers, all rights and obligations of CCNC flowed to Beazer by operation of law, obviating the need to comply with the anti-assignment provision.

The policies provide:

**WHO IS AN INSURED**

If you are designated in the Declaration as:  . . . d.  An organization other than a partnership, joint venture or limited liability company, you are an insured. . .

The policies further provide:

K.  TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

The record shows that in a merger subject to Delaware law, Beazer Homes Investment Corp., at the time a subsidiary of Beazer Homes USA, Inc., acquired Crossmann Communities, Inc. (Crossmann Communities, Inc. Form 8-K, ECF No. 195-10, A-13 through A-14.)    In addition, the record shows that effective January 1, 2005, at the subsidiary level, CCNC was merged into Beazer Homes Corp., a Tennessee corporation, and that the merger was subject to both Tennessee law and North Carolina law.  (Articles of Merger of Crossmann Communities of North Carolina, Inc. into Beazer Homes Corp., ECF No. 224-2.)

The Court notes that in general terms, when one corporation merges into another corporation, the successor corporation "stands in the shoes" of the merged corporation, and assumes the rights, obligations, and liabilities of the merged corporation.  *See* S.C. Code § 33-11-106 (1976).  The issue of whether and under what conditions a successor corporation succeeds to the rights of the predecessor corporation's insurance policies does not appear to have been

addressed in any reported judicial decision applying South Carolina law. Harleysville has cited number of cases in which courts have rejected the successor corporation's efforts to access the predecessor's insurance policies. *See e.g., Keller Foundations, Inc. v. Wausau Underwriters, Inc. Co.,* 626 F.3d 871, 874 (5th Cir. 2010); *Travelers Cas. & Surety Co. v. United Stated Filter Corp.*, 895 N.E. 2d 1172 (Ind. 2009); *see also* Harleysville's June 8, 2012 Memorandum (ECF No. 187-1.) These cases in general hold that in the corporate transactions involved in those cases, the rights to the predecessor's insurance policies were not properly transferred to the successor corporations.

Beazer's brief cites to a number of cases that stand for the proposition that if a company becomes the successor of another company through a merger, the rights to the predecessor corporation's insurance policies automatically vest with the surviving company, and are available to cover claims against the successor corporation that are based on the predecessor's "pre-merger" acts or omissions. (*See* Beazer's June 29, 2012 Brief, at 9-13.) Beazer contends that at the "parent" level, Crossmann Communities, Inc. and its wholly-owned subsidiary, CCNC, merged into Beazer Homes Investment Corp. in 2002. The merger agreement purports to be governed by Delaware law and Indiana Law. (Crossmann Communities, Inc., 2002 Form 8-K, ECF No. 195-10, A-13 through A-14.) Because the surviving entity is a Delaware Corporation, Delaware law governs the transfer of rights under the Harleysville Policy. Under Delaware law, "upon merger, the [merged company's rights under its insurance policies] automatically vested in the surviving corporation by operation of the merger statute. . . In other words, the surviving corporation simply stands in the same position as that occupied by the merged corporation prior to the merger." *Brunswick Corp. v. St. Paul Fire & Marine Ins. Co.*, 509 F.Supp. 750, 752-53 (E.D. Pa. 1981) (applying Delaware law). *Accord*, 3-16 Appleman on Insurance § 16.05 (2011) and cases cited therein.

11

The record also shows that at the subsidiary level, CCNC merged into Beazer Homes Corp. in 2004. (Articles of Merger of Crossmann Communities of North Carolina, Inc. into Beazer Homes Corp., ECF No. 224-2.) Beazer Homes Corp. was a Tennessee Corporation, and the merger agreement indicates that the merger was to be governed by both Tennessee and North Carolina law. The Tennessee merger statute provides, in pertinent part, as follows:

> (a)    When a merger becomes effective:
>
>> (1)    The corporation or eligible entity that is designated in the plan of merger as an entity surviving the merger shall survive, and the separate existence of every other corporation or eligible entity that is a party to the merger shall cease;
>>
>> (2)    All property owned by, and **every contract right** possessed by, each corporation or eligible entity that is merged into the survivor shall be vested in the survivor without reversion or impairment;
>>
>> (3)    All liabilities of each corporation or eligible entity that is merged into the survivor shall be vested in the survivor.

(emphasis added). Tenn. Statute § 48-21-108. Under Tennessee law, "every contract right" possessed by the merged corporation "shall be vested in the survivor corporation without reversion or impairment." (*Id.*) Because the Harleysville Policy is a contract, this statute provides that the rights of CCNC vested automatically in Beazer Homes Corp.

Review of the North Carolina merger statute leads to a similar conclusion. That statute provides as follows:

> (a)    When a merger pursuant to G.S. 55-11-01, 55-11-04, 55-11-07, or 55-11-09 takes effect:
>
>> (1)    Each other merging corporation merges into the surviving corporation and the separate existence of each merging corporation except the surviving corporation ceases.
>>
>> (2)    The title to all real estate and other property owned by each merging corporation is vested in the surviving corporation without reversion or impairment.

(3)    The surviving corporation has all liabilities of each merging corporation.

N.C.G.S.A. § 55-11-06[6]; see also, *Feibus & Co., Inc. (N.C.) v. Godley Const. Co., Inc.*, 271 S.E.2d 385, 391 (N.C., 1980) ("It is well-established in this State that the surviving corporation succeeds to the rights of the corporation that merged into it and also retains its own rights and obligations as they existed prior to the merger. G.S. 55-110(b) (1975).")

The Court finds that the various merger statutes and case law cited by the parties supports Beazer's position that, as a result of the Crossmann and Beazer mergers discussed above, all rights that CCNC had under the Harleysville Policy vested in Beazer at the time of the mergers, and that the anti-assignment clause in the Harleysville Policy does not bar Beazer's claims for coverage under the Harleysville Policy.  This view is consistent with the general rules of corporate mergers, which provide that the surviving corporation in essence incorporated the acquired company into itself, for all purposes becoming the predecessor company.  Stated another way, in a merger the surviving corporation assumes all rights and obligations of the predecessor, taking the "bad," such as the predecessor's liability to third parties based on pre-merger acts and omissions, as well as the "good"-- the predecessor's rights to potential insurance coverage to offset losses arising from the  pre-merger acts and omissions.

Harleysville contends that it is unfair and otherwise improper for the Beazer entities to obtain coverage for the *True Blue lawsuit* because to do so would significantly increase the scope of the risk accepted by Harleysville when it sold the Harleysville Policy to Pinehurst Builders and later CCNC.  The Court disagrees with this assertion.  Harleysville agreed in its Policy to indemnify CCNC for "property damage" during its policy period (ending August 29, 1998) caused by an "occurrence."  The scope of this risk assumed by Harleysville was not expanded by

---

[6] The South Carolina merger statute is essentially identical to the North Carolina merger statute. *See* S.C. Code § 33-11-106 (1976)

virtue of the mergers because (a) whatever property damage occurred at the True Blue project on or before the expiration of the Policy on August 29, 1998 was fixed as of the day Harleysville went off the risk, and (b) Beazer seeks in this action only the duty to indemnify and duty to defend for which the Policy provides.

Harleysville also contends that the low premiums charged for the Policy show that the Parties did not intend that Harleysville would have to defend a case as large and complex as the *True Blue* lawsuit. The Court rejects this argument as well. The Harleysville Policy is a contract, and for the consideration charged by Harleysville in the way of premium, and paid by the insureds, Harleysville agreed to assume the risks that are covered under the Policy as governed by applicable law. The Harleysville Policy covers what the contract and applicable law says is covered. The amount of premium charged for the Policy is not relevant.

For the reasons stated above, the Court holds that Beazer has the same rights as CCNC had under the Harleysville Policy.

### B. Beazer's Claims That Harleysville Has A Duty To Defend the *True Blue lawsuit*

Given the Court's ruling that CCNC's rights to coverage under the Harleysville Policy vested in Beazer by virtue of the mergers described above, the Court now turns to the Harleysville "duty to defend" issues raised by the Parties' Motions. First, the Court must determine whether Harleysville's duty to defend Beazer is triggered by the *True Blue lawsuit*. If Harleysville's duty to defend is triggered, then the Court must determine (a) the proper scope of Harleysville's duty to defend; (b) whether Harleysville has breached its duty to defend Beazer and, if there has been a breach of that duty; (c) the appropriate remedy.

The Harleysville Policy provides that Harleysville "will have the right and duty to defend any 'suit' seeking [potentially covered] damages." (Harleysville Policy, Entry Number 187-9, at

14

37.)  Covered damages under the Harleysville Policy include "those sums that [Beazer] becomes legally obligated to pay as damages because of… 'property damage'…" caused by an "occurrence."  (*Id.* at 37.)  When analyzing the language in Harleysville's Policy, the Court first determines if the policy language is clear and unambiguous.  If so, the Court must apply the plain meaning of the policy language to the issues presented.  If, however, the operative language in the Policy is ambiguous and susceptible to more than one reasonable meaning, the Court must adopt the interpretation that favors coverage.  *Beaufort County School Dist. v. United Nat. Ins. Co.*, 709 S.E.2d 85, 90 (S.C. App. 2011).

Under South Carolina law, if the underlying complaint and relevant facts known to the insurer indicate that there is a potential for coverage under the insurance policy, the insurer is obligated to defend the insured.  *City of Hartsville v. South Carolina Mun. Ins. & Risk Fin. Fund*, 677 S.E. 2d 574 (S.C. 2009).  Harleysville does not dispute this well-settled rule of South Carolina law.

In the amended complaint in the *True Blue lawsuit*, the homeowners' association plaintiffs allege that there is property damage at all the buildings in the True Blue project caused by long-term water intrusion. Water damage to components of buildings that results from the negligent installation or construction of other components of the buildings is potentially covered under the Harleysville Policy.  *Crossmann Communities of N.C. Inc. and Beazer Homes Investment Corp. v. Harleysville Mut. Ins. Co., and Cincinnati Ins. Co.*, No. 04-CP-26-84 ("*Crossmann I*"); *Crossmann II*, 717 S.E.2d 589 (S.C. 2011). The property damage alleged by the HOA plaintiffs in the *True Blue lawsuit* includes such resulting water damage.  (*True Blue lawsuit*, Amended Complaint, Entry Number 187-7, at 9-10.) In addition, the Affidavit of Mr. Richard Moore (ECF No. 195-1) submitted by Beazer demonstrates that the water damage alleged by the True Blue plaintiffs likely began at or shortly after the time the defective

15

components of the buildings at the True Blue Project were installed.  The plaintiffs' allegations in the *True Blue lawsuit* and the evidence submitted by Beazer with the Rick Moore affidavit show as follows:

- The amended complaint in the *True Blue lawsuit* alleges that "…substantial parts of the buildings have been and will be <u>continuously and repeatedly exposed</u> to leaks causing moisture infiltration resulting in mold, rot, deterioration and degradation of the buildings." (*True Blue lawsuit*, Amended Complaint, ECF No. 187-7, at 9-10) (emphasis added).

- The amended complaint in the *True Blue lawsuit* further alleges that "products either individually and/or aggregately defectively installed and/or <u>defective at the time of installation</u> have caused the buildings and various portions of the common elements to be <u>continuously and repeatedly</u> exposed to excessive moisture…" (*Id*. at 8) (emphasis added).

- Mr. Moore attests in his affidavit that the damage to buildings at the True Blue Project "results from the total and cumulative effect of all exposures to water and moisture from the time the buildings were completed and sold until the damage is discovered.  This type of water damage begins with the first intrusion of moisture behind the buildings' exteriors and progresses over time."  (ECF No. 195-1, ¶ 5.)

(emphasis added).  The Court finds that the allegations in the *True Blue lawsuit* and evidence from the Moore Affidavit show at least the potential for property damage caused by an occurrence during the Harleysville Policy period that may be insured by Harleysville.  The Court notes that in Harleysville's reservation of rights letters sent to Beazer in August 2009, Harleysville appears to have reached the same conclusion.  (ECF No. 187-4.)[7]  The Court also notes that counsel did not argue this point at the hearing before the Court.

---

[7] Harleysville advised Beazer as follows:

> As there is at least a potential for coverage for the damages being alleged against Beazer Homes as a successor of Pinehurst Builders as the general contractor of the project at issue and in that thirteen (13) of the eighty-three (83) buildings were completed during the policy period at issue, Harleysville Insurance is willing to defend Beazer Homes under this reservation of rights under the terms and conditions set forth in the Pinehurst Builders Policy.

Harleysville argues that even if the property damage alleged by the plaintiffs in the *True Blue lawsuit* falls within the meaning of the insuring agreement in the Harleysville Policy and is potentially covered pursuant to *Crossman II*, the "impaired property" exclusion in the Policy, as a matter of law, bars any potential for coverage. (Harleysville's June 8, 2012 Brief, ECF No. 187-1, at 18.)   The Court finds that this argument is without merit with respect to whether Harleysville has a duty to defend Beazer.  The Harleysville Policy excludes coverage for:

> n.    "Property damage" to "impaired property" … arising out of:
>
> (1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work," or
>
> (2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

(Harleysville Policy, ECF No. 187-9, at 0038-0039.)   "Impaired property" is defined in the Harleysville Policy as follows:

> 5.    "Impaired property" means tangible property, other than "your product" or "your work" that cannot be used or is less useful because:
>
> a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous, or
>
> b.    You have failed to fulfill the terms of a contract or agreement;
> If such property can be restored to use by:
>
> (1)    The repair, replacement, adjustment or removal of "your product" or "your work;" or
>
> (2)    Your fulfilling the terms of the contract or agreement.

(*Id*. at 0044.)

In accordance with South Carolina law, the Court construes the "impaired property" exclusion in the Harleysville Policy narrowly, with any ambiguity construed in favor of coverage.  *Owners Ins. Co. v. Clayton*, 614 S.E. 2d 611 (S.C. 2005) ("[I]nsurance policy

---

(Letter from D. Harris, Aug. 24, 2009, Entry Number 187-4, at 12.)

exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability.").

As an initial matter, the Court notes that the applicability of the impaired property exclusion depends upon the precise nature of the alleged property damage at the True Blue project. Because the *True Blue* lawsuit has apparently not yet been tried, the specific facts regarding how the property damage began, how it progressed, and what portions of the buildings were impacted have not been established. As a result, it is premature for the Court to rule on the application of a coverage exclusion like the impaired property exclusion that is so driven by the applicable facts in the pending underlying *True Blue* lawsuit for purposes of indemnification.

In any event, the impaired property exclusion only bars coverage for the cost to repair the negligently constructed work itself, not the resulting water damage to otherwise properly installed or constructed components of the buildings. *Auto Owners Ins. Co. v. Newman*, 684 S.E.2d 541 (S.C. 2009). In *Newman*, the South Carolina Supreme Court found that an impaired property exclusion similar to that in the Harleysville Policy only prohibits recovery for the cost of removing and replacing the defectively installed stucco. The Court has determined that there are allegations and evidence showing that at least some of the alleged property damage at True Blue is alleged to have resulted from water damage to otherwise properly installed or constructed components. In addition, the impaired property exclusion by its plain terms requires that the property "cannot be used or is less useful." There is evidence in the record through the Moore Affidavit suggesting that, notwithstanding the alleged property damage at the True Blue project, the individual units at True Blue are in use and do not appear to be less useful. (Moore Affidavit, ECF No. 195-1, at 5.) The Court therefore finds that the impaired property exclusion does not bar coverage under the Harleysville Policy at this stage of the case. Once the facts in

the underlying *True Blue lawsuit* are established, Harleysville is free to argue that some or all of the costs to repair property damage is barred by the impaired property exclusion.

The Court finds that, based on the allegations in the True Blue lawsuit and the evidence in the record through the Moore Affidavit, there is at least the potential for coverage under the Harleysville Policy for the True Blue lawsuit. The Court also finds that the impaired property exclusion does not at this stage of the case bar the potential for coverage as a matter of law. Therefore, the Court finds that Harleysville has a duty to defend Beazer in the *True Blue lawsuit*.

### C.     The Scope of Harleysville's Duty To Defend

Having found that Harleysville's duty to defend has been triggered, the Court now addresses the proper scope of Harleysville's duty. Beazer claims that once Harleysville's duty to defend is triggered, Harleysville must defend Beazer against all claims in the *True Blue lawsuit*, even those claims that are not covered under the Harleysville Policy. Harleysville contends that its duty to defend extends only to Buildings One through Thirteen at the True Blue project because those are the only buildings for which Harleysville may have a duty to indemnify Beazer, and that Harleysville has no duty to defend any of the claims that relate to Buildings 14-84 at the True Blue project.

South Carolina law supports Beazer's position, and the Court so holds. In *Town of Duncan v. State Budget & Control Bd.*, 482 S.E.2d 768 (S.C. 1997), the South Carolina Supreme Court held that an insurer whose duty to defend has been triggered by a lawsuit against the insured "is not justified in refusing to defend the entire case." Further, "[u]nder South Carolina law, an insurer's duty to defend is triggered if any cause of action in a complaint seeks damages covered by the policy." *Liberty Mut. Fire Ins. Co. v. J.T. Walker Ind., Inc.*, C.A. No. 2:08-2043-MBS, 2012 WL 3292973 at *16 (D.S.C. August 10, 2012). Similarly, in *Twin City Fire Ins. Co. v. Bear Arnold-Surebelt Beverages,* 433 F.3d 365, 366 (4th Cir. 2010), the Court held that when a

policyholder notifies its insurer of a potentially covered suit, the "insurance company, in turn, typically chooses, retains, and pays private counsel to represent the <u>insured as to all claims in that suit</u>." *Id*. at 366 (emphasis added).

South Carolina law requires that a triggered insurer with a duty to defend the policyholder in a suit must defend the policyholder against all claims in that suit, even those claims that are not covered under the policy. This rule is consistent with the language in the Policy obligating Harleysville to defend its insured in any "suit" that alleges potentially covered claims. If Harleysville wanted to limit the scope of its duty to defend to the parameters outlined in its motion, Harleysville could have insisted upon Policy language that limits its duty to defend to "that portion of the suit" seeking potentially covered damages. There is no such limiting language in the Harleysville Policy.

Harleysville further contends that even if its duty to defend extends to all claims in the *True Blue lawsuit*, the scope of Harleysville's duty to defend is limited to a "pro rata" share of Beazer's defense costs. Harleysville seeks a ruling that all insurers whose policies are triggered by the *True Blue lawsuit* must share with Harleysville the cost of defending Beazer. This issue is addressed in this Court's order ruling on the motions for summary judgment regarding Fourth Party claims.

The Court finds that Harleysville's duty to defend requires Harleysville to defend Beazer against all claims in the *True Blue lawsuit*.

**Harleysville Has Breached Its Duty To Defend Beazer**

The Court now turns to the issue of whether Harleysville has breached its duty to defend Beazer in the *True Blue lawsuit*. By letter dated August 24, 2009, Harleysville informed Beazer that it would only provide a limited defense to Beazer in the *True Blue lawsuit*, and would only defend claims related to the thirteen buildings completed during the time its Policy was in effect.

(Letter from D. Harris, Aug. 24, 2009, ECF No. 187-4, at 13.)  As a result of this position taken by Harleysville, Beazer was forced to retain defense counsel to defend against all the claims in the *True Blue lawsuit*, most of which Harleysville refused to defend.  By letter dated September 23, 2009 (ECF No. 186-6, at 00432), Beazer reiterated its demand that Harleysville defend Beazer against all claims in the *True Blue lawsuit*.  Beazer also advised Harleysville that the Elmore & Wall (now Elmore Goldsmith) firm would defend Beazer in the *True Blue lawsuit*.  (*Id.*)  By letter dated October 29, 2009 (ECF No. 187-5), Harleysville reiterated its refusal to defend Beazer against all claims in the *True Blue lawsuit*.  (*Id.*, at 5.)

Harleysville's efforts to limit its defense obligation in this manner are contrary to South Carolina law as set forth in *Sloan*, *MAJ*, *J.T. Walker*, *Town of Duncan*, *Twin City*, and other South Carolina precedent cited in this Order.  By claiming impermissible limitations on its duty to defend, Harleysville has breached the contractual duty to defend obligation set forth in the Harleysville Policy.[8]

### D.    The Appropriate Remedy For Harleysville's Breach Of Its Duty To Defend

As set forth above, Harleysville has breached its duty to defend Beazer in the *True Blue lawsuit*.

**Attorney's Fees**.  The Court will next discuss the issues of attorney's fees.  An insurer that breaches its duty to defend an insured may be held liable for the expenses incurred by the insured in providing for his own defense.  *Unisun Ins. Co. v. Hertz Rental* Corp., 435 S.E.2d 182 (Ct.

---

[8]    Harleysville further contends that even if it breached its duty to defend, Beazer was precluded from retaining the Elmore Goldsmith firm to defend the *True Blue lawsuit* because Elmore Goldsmith was adverse to Harleysville in this case, and therefore barred from representing Beazer in the underlying *True Blue lawsuit*.  This argument is without merit.  Harleysville's breach of its duty to defend forced Beazer to retain defense counsel.  Beazer selected Elmore Goldsmith, and Elmore Goldsmith's client in the *True Blue lawsuit* was and remains Beazer.  The fact that Beazer demanded that Harleysville pay Elmore Goldsmith's fees does not make Harleysville Elmore Goldsmith's client for ethical conflict purposes.  Harleysville's payment of Elmore Goldsmith's invoices for defense of the *True Blue lawsuit* would not make Harleysville a client of Elmore Goldsmith.  There is no impediment to Elmore Goldsmith defending Beazer in the *True Blue lawsuit* and also representing that same client – Beazer – in this coverage case against Harleysville.

App. 1993). In order to be entitled to reimbursement of attorney's fees and costs, the insured must prove that the requested fees and costs were reasonable and were incurred in the defense of the underlying lawsuit. *Gordon-Gallup Realtors, Inc. v. Cincinnati Ins. Co.*, 265 S.E.2d 38 (S.C. 1980); *Employers Mut. Liab. Ins. Co. v. Hendrix*, 199 F.2d 53, 58 (4th Cir. 1952). Beazer has not submitted to the Court any itemization of requested attorney's fees and costs but states that the amount could be determined in mediation or at trial. (ECF No. 211, p. 13). Beazer only seeks at this time a declaration that Harleysville has a duty to defend and that defense costs would be recoverable. *Id.*

**Prejudgment Interest**. The award of prejudgment interest in a diversity case is governed by state law. *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999). South Carolina Code Section 34-31-20(A) provides for prejudgment interest "[i]n all cases of accounts stated and in all cases wherein any sum or sums of money shall be ascertained and, being due." "The law allows prejudgment interest on obligations to pay money from the time when, either by agreement of the parties or operation of law, payment is demandable, if the sum due is certain or capable of being reduced to certainty." *APAC Carolina, Inc. v. Town of Allendale, South Carolina*, 41 F.3d 157, 165 (4th Cir. 1994) (citing *Babb v. Rothrock*, 426 S.E.2d 789, 791 (1993). Generally, prejudgment interest is not appropriate when a plaintiff seeks to recover unliquidated damages. *Id.* However, "the fact that the sum due is disputed does not render the claim unliquidated for the purposes of an award of prejudgment interest." *Babb*, 426 S.E.2d at 791 (citing 47 C.J.S. *Interest and Usury*, Section 49 at 124-25 (1982). "Rather, the proper test is 'whether [or not] the measure of recovery, not necessarily the amount of damages, is fixed by conditions existing at the time the claim arose." *Historic Charleston Holdings, LLC v. Mallon, LLC*, 673 S.E.2d 448, 457 (2009).

In the case at bar, there is no evidence of an agreement between Beazer and Harleysville as to a sum certain which is owed.  In fact, Beazer has not presented the Court with any exact amount that it contends is owed or any basis for computation of an exact amount.  The amount of attorney's fees and litigation costs incurred by Beazer will not be established until the conclusion of the underlying *True Blue* case.  Then, it would be necessary to determine whether the amount claimed was reasonable.  The request for prejudgment interest is denied.

**Conclusion**

Therefore, the Court holds that

a) Beazer's Motion for Partial Summary Judgment On "Duty To Defend" Claims Against Third-Party Defendant Harleysville Mutual Insurance Company (Entry Number 186) is GRANTED;

b) Harleysville's Motion for Summary Judgment (Entry Number 187) is DENIED;

c) Partial summary judgment is entered in favor of Beazer and against Harleysville declaring that Harleysville has an immediate duty to defend Beazer against all claims in the *True Blue*  Suit;

d) Partial summary judgment is entered in favor of Beazer and against Harleysville declaring that Harleysville has a duty to reimburse Beazer for reasonable defense costs incurred in the *True Blue lawsuit*; and

e) The request for an award of prejudgment interest on the defense costs paid by Beazer is DENIED.

IT IS SO ORDERED.


Dated: March 27, 2013                    s/R. Bryan Harwell
Florence, South Carolina                 R. Bryan Harwell
                                         United States District Judge