IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Cincinnati Insurance Company, | ) | Civil Action No. 4-09-1379-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Crossmann Communities of | ) | |
| North Carolina, Inc.; Crossmann | ) | |
| Communities, Inc.; Beazer Homes | ) | |
| Investment Corporation; True Blue | ) | |
| Golf & Racquet Resort | ) | |
| Homeowners' Association, Inc., and | ) | |
| Beazer Homes Corp., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| Crossmann Communities of | ) | |
| North Carolina, Inc.; Crossmann | ) | |
| Communities, Inc.; Beazer | ) | |
| Homes Investment Corporation, | ) | |
| and Beazer Homes Corp., | ) | |
| | ) | **O R D E R** |
| Third Party Plaintiffs, | ) | (Regarding Fourth Party Claims) |
| | ) | |
| vs. | ) | |
| | ) | |
| Harleysville Mutual Insurance Company, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| _____ | ) | |
| Harleysville Mutual Insurance Company, | ) | |
| | ) | |
| Fourth-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Indiana Insurance Company, | ) | |
| Massachusetts Bay Insurance Company, | ) | |
| Regent Insurance Company, | ) | |

1

Illinois Union Insurance Company,        )
Liberty Mutual Insurance Company,        )
and Zurich Insurance Company,            )
                                         )
            Fourth-Party Defendants.     )
_____)

Before the Court are several pending motions regarding the Fourth Party Claims by Fourth Party Plaintiff Harleysville Mutual Insurance Company ("Harleysville"). Those are Motion for Summary Judgment by Fourth Party Plaintiff Harleysville (ECF No. 153), Motion for Summary Judgment by Fourth Party Defendant Indiana Insurance Company (ECF No. 150), Motion for Summary Judgment by Fourth Party Defendant Liberty Mutual Insurance Company (ECF No. 149), Motion for Summary Judgment by Fourth Party Defendant Massachusetts Bay Insurance Company (ECF No. 151), Motion for Summary Judgment by Fourth Party Defendant Illinois Union Insurance Company (ECF No. 154), and Motion for Summary Judgment by Fourth Party Defendant Zurich American Insurance Company (ECF No. 157). Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing."

Harleysville seeks a declaration that, if Harleysville has a duty to defend, then the Fourth Party Defendants are also obligated to pay their pro-rata time-on-risk portion of defense costs incurred and paid by Harleysville in the underlying lawsuit, *True Blue Golf & Racquet Resort Homeowners' Association, Inc. and True Blue Golf & Racquet Resort Horizontal Property Regime, v. Beazer Homes Corp., Inc. and Structure Home Builders, LLC*, Civil Action No. 2009-CP-22-00912.[1] Each of the

---

[1] Harleysville also initially requested a declaration that any indemnity obligation that may arise from the underlying lawsuit which is determined to be covered by the Harleysville policies should be borne by the fourth-party defendants based on their respective pro-rata time-on-the-risk. However, Harleysville now states: "As Harleysville is only responsible for any covered damages attributable to its time-on-the-risk, it does not have contribution claims for indemnity against Mass Bay, Regent,

2

insurance companies which are named as Fourth Party Defendants have also moved for summary judgment on the basis that an insured owing a duty of defense to an insured is not entitled to contribution from other insurers who also may owe a duty to defend the insured.[2]

**Facts**

Crossmann Communities of North Carolina, Inc., Crossmann Communities, Inc., Beazer Homes Investment Corporation, and Beazer Homes Corp., Inc. (collectively referred to as "Beazer") are engaged in the business of real estate construction. Beazer has developed and constructed a number of resort and residential communities and other properties in South Carolina. One of these residential communities was the True Blue Golf & Racquet Resort located in Georgetown County, South Carolina ("True Blue"). On June 17, 2009, Beazer was sued by the True Blue Golf & Racquet Resort Homeowners Association, Inc. and True Blue Golf & Racquet Resort Horizontal Property Regime for compensatory damages and other relief based upon allegations that the acts and omissions of Beazer and its subcontractors caused damage at the True Blue properties, giving rise to the "Underlying Lawsuit". It has been alleged that during the time periods that the plaintiffs in the Underlying Lawsuit claimed that the damage occurred, Beazer was covered by policies of insurance issued by a number of

---

Illinois Union, Liberty Mutual and Zurich, which issued policies after the termination of Harleysville's own policy period." (ECF No. 153-1, p. 28). Harleysville still seeks, however, a declaration regarding indemnity as to Indiana because of overlapping coverage with Indiana.

[2] Zurich indicates in its motion that it should properly be designated as Steadfast Insurance Company and American Guarantee and Liability Insurance Company. ECF No. 157. Further, Zurich asserts that Beazer has not paid the self-insured retention amounts specified in the policy and that therefore the policy has not even been triggered as to duty to defend or to indemnify. It also asserts that its policy is not a standard ISO CGL policy. Harleysville argues that the policy does require a duty to defend. It is not necessary to discuss this argument because of the Court's finding that Harleysville is not entitled to contribution for defense costs.

insurers, including Harleysville, Cincinnati Insurance Company ("Cincinnati"), Indiana Insurance Company, Massachusetts Bay Insurance Company, Illinois Union Insurance Company, Liberty Mutual Insurance Company, and Zurich American Insurance Company.[3]

**Legal Standard-Summary Judgment**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.*, (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

---

[3] In 2005, Beazer and Indiana reached a final settlement of disputes over coverage in a 2004 state court action which involved the "River Oaks" and other underlying lawsuits. The settlement agreement provided that Indiana's payment to Beazer would exhaust Indiana's policies. In 2006, Beazer and Massachusetts Bay also settled their coverage disputes, and the settlement agreement provided that the payment by Massachusetts exhausted its coverage. Beazer reached a similar settlement with Regent. (Affidavit of David B. Miller, ECF No. 172-1). After the settlements with these insurers, a state circuit judge issued an order, which was appealed by Harleysville. The appeal resulted in a published decision by the South Carolina Supreme Court, *Crossmann Communities of N.C., Inc. v. Harleysville Mutual Ins. Co.*, 717 S.E.2d 589 (S.C. 2011), discussed hereinafter.

4

**Duty to Defend**

"If the facts alleged in the complaint raise a reasonable possibility that the insured may be held liable for some act or omission covered by the policy, then the insurer must defend. If no such possibility is raised, no duty of defense is owed." *Liberty Life Ins. Co. v. Commercial Union Ins. Co*., 857 F.2d 945, 949 (4th Cir. 1988). "Hence, whether a duty to defend exists is determined by comparing the allegations of the complaint to the terms of the policy." *Id*. at 949-50. "Moreover, an insurer has no duty to defend an insured where the damage was caused by a reason unambiguously excluded under the policy." *Federated Mutual Ins. Co. v. Piedmont Petroleum Corp*., 444 S.E.2d 532, 533 (S.C. Ct. App. 1994). However, "inclusion of some non-covered claims does not abrogate an insurer's duty to defend when a complaint raises claims covered by the policy." *Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 459 S.E.2d 318, 319 (S.C.Ct. App. 1994). It is well settled that the duty to defend is broader than the duty to indemnify. *See Sloan Construction Co., Inc. v. Central National Insurance Company of Omaha*, 236 S.E.2d 818 (S.C. 1977). In the case at bar, this Court has already held in an order entered in this action (ECF No. 248) that Harleysville has a duty to defend Beazer Homes Corp., Inc. in the underlying state court action.

In this order, the Court will consider Harleysville's arguments that it is entitled to reimbursement for defense costs from the other insurance companies.

**Standards for Federal Court Sitting in Diversity**.

It is not the role of a federal district court sitting in a diversity case to overrule or change state law. *Bennett v. Ford Motor Co.*, 236 F. Supp. 2d 558, 563 (D.S.C. 2002), *(*citing *Erie R.R. v. Tompkins*, 304 U.S. 64(1938)(". . . the federal courts sitting in diversity rule upon state law as it exists and do not surmise or suggest its expansion.")); *see also, Thompson v. CDL Partners,* 378 F. App'x. 288, 291 (4th

5

Cir. 2010); *Private Mortg. Inv. Serv., Inc. v. Hotel & Club Assocs., Inc*., 296 F.3d 308, 312 (4th Cir. 2002) ("As a federal court sitting in diversity, we have an obligation to apply the jurisprudence of South Carolina's highest court, the South Carolina Supreme Court."). If South Carolina law is to be changed in this regard, that is a matter properly left to the courts of that state. This Court is duty-bound to apply *Sloan Construction* and to deny Harleysville's motion insofar as it pertains to defense costs. Even if Harleysville is correct that some sort of *pro rata* allocation of defense costs could be deemed to be preferable, it is not the role of a federal district court sitting in a diversity case to overrule or change state law.

### *Sloan* decision.

The seminal issue before the Court is whether the South Carolina Supreme Court decision in *Sloan Construction Co. v. Central National Insurance Co*., 236 S.E.2d 818, 820 (S.C. 1977), applies to require dismissal of Harleysville's claims against the other insurers. In that case, Sloan Construction Company was the defendant in a civil action brought by Larry Varner arising out of an automobile accident. Two liability insurance companies had a duty to defend Varner, Central National Insurance Company and Liberty Mutual Insurance Company. Central refused to provide a defense while Liberty agreed to defend him in the case. Sloan paid the attorney's fees with the proceeds of a loan from Liberty. Under the "loan receipt agreement," the loan did not need to be repaid unless Sloan recovered from a third party. Therefore, Sloan did not actually incur any damage by Central's refusal to defend. If any party was damaged, it was Liberty. After the conclusion of the case, Sloan brought an action against Central to recover the attorney's fees paid in defending the case. The South Carolina Supreme Court stated:

> The duty to defend is personal to each insurer. The obligation is several and the insurer is not entitled to divide the duty nor require contribution from another absent a specific

6

> contractual right. When Sloan was sued, it had the right to look to both Liberty and Central or to either of them for protection. When Central disclaimed coverage, Sloan demanded full protection from Liberty. When Liberty undertook the defense of the Varner action, it was doing no more than it was obligated to do under the terms of its contract with Sloan. The fact that Central also had a duty to defend was irrelevant to the rights and duties existing between Liberty and Sloan by reason of their insurance contract. Central's refusal to defend Sloan did not affect Liberty' obligations to Sloan, and when Liberty undertook the defense it was acting not for Central but for its insured, Sloan.
>
> Each insurer contracted to defend, at its own expense, any suit within the terms of its policy. Liberty's expenses in defending Sloan were incurred in the fulfillment of its own obligation to its insured.

*Id*. at 820. The court stated its holding as follows:

> **We hold where two companies insure the identical risk and both policies provide for furnishing the insured with a defense, neither company, absent a contractual relationship, can require contribution from the other for the expenses of the defense where one denies liability and refuses to defend. The duty to defend is personal to both insurers; neither is entitled to divide the duty.**

*Id*. (emphasis added).

In *Transcontinental Ins. Co. v. MAJ Enter., Inc*., No. 2:05-2594, 2005 WL 3465573 (D.S.C. Dec. 19, 2005), Judge Norton issued an unpublished decision in a case presenting related issues. Plaintiffs Transcontinental Insurance Company and Valley Forge Insurance Company (collectively "CNA") sought a declaratory judgment clarifying their obligations under liability policies insuring MAJ Enterprises, Inc. Defendants Selective Insurance Company and Auto-Owners Insurance Company also issued polices to MAJ. The underlying lawsuit concerned alleged defective construction of a home and progressive damage. Both CNA and Auto-Owners agreed that they had a duty to defend and both contributed to MAJ's defense in varying amounts. One of the issues in the DJ action before Judge Norton was whether CNA should be awarded a money judgment against Auto-Owners for contribution to defense costs. CNA asserted that Auto-Owners should be paying more than the 33% of MAJ's costs

7

that they provided. CNA contended that Auto-Owners should be paying 50% of the costs and fees. Judge Norton relied upon *Sloan* in holding that the motion for summary judgment by Auto-Owners as to the request for contribution should be granted. Judge Norton found that, while the facts of *Sloan* were distinguishable, the reasoning of the case focused on the fact that "each insurer is contractually bound to provide a defense and cannot divide that duty . . . If *Sloan* prohibited contribution from an insurer who disavowed all obligations to fund the defense, it is illogical to conclude *Sloan* would permit contribution when the second insurer does fund a portion of the defense."

After the issuance of *Sloan*, the South Carolina Supreme Court issued its now well-known decision in *Crossmann Communities of N. C., Inc. v. Harleysville Mutual Ins. Co.*, 717 S.E.2d 589 (S.C. 2011). This opinion is known as "*Crossmann II*" because the court initially issued an opinion on January 7, 2011, finding no coverage. However, this opinion was withdrawn and an opinion was issued on August 22, 2011 finding that damages to condominium units from repeated water intrusion constituted an occurrence under the developer's CGL policy and that the scope of the insurer's liability to the insured was limited to damages accrued during its "time on the risk"

Harleysville distinguishes the *Sloan* decision on the basis that it did not involve multiple successive insurers in a progressive damage case. It involved damages resulting from a single incident, a car accident, a claim with a "very specific and discrete date of loss." (Docket Entry # 170, p. 8). Harleysville asserts that by expressly overruling *Century Indem. Co. v. Golden Hills Builders, Inc.*, 561 S.E.2d 355 (S.C. 2002), and adopting a time-on-risk allocation of the indemnity obligation among multiple triggered policies in *Crossmann II*, a progressive damage case, the South Carolina Supreme Court has indicated that it would also find that all triggered insurers must share the defense obligation for a progressive damage case on a pro-rata time-on-risk basis. Harleysville further asserts that *Sloan*

8

limited its holding to insurance companies insuring the "identical risk" and that the insurance policies here insure different named insureds (successor or predecessor entities) for different policy periods. It contends that *Sloan* should be limited to its specific facts. It cites *Unisun Ins. Co. v. Hertz Rental Corp.*, 436 S.E.2d 182, 186 (S.C. Ct. App. 1993). However, *Unisun* distinguished its facts from *Sloan*, where both carriers were primary, holding that the uninsured motorist carrier which provided a defense to the insured could recover its defense expenses from the primary carrier.

Harleysville contends that jurisdictions which have adopted a time-on-risk allocation of damages in progressive damages cases as the Supreme Court of South Carolina has done in *Crossmann II* "have universally found that a similar time-on-risk allocation of defense costs was appropriate." (*See* cases cited in ECF No. 170, p. 12.) Harleysville relies on *Maryland Casualty Co. v. W.R. Grace and Co.*, 218 F.3d 204 (2d Cir. 2000). However, counsel for Indiana points out that this case was decided under New York law, where insurers are required to share defense costs. Harleysville also cites *Security Ins. Co. v. Lumbermens Mut. Cas. Co.*, 826 A.2d 107 (Conn. 2003), a case which it contends was relied upon by *Boston Gas Co. v. Century Indemnity Co.*, 910 N.E.2d 290 (Mass. 2009), which was in turn relied upon by *Crossmann*. This Court notes that *Boston Gas* cited *Security* by way of footnote 37 for its holding that, although courts generally construe ambiguities in insurance policies in favor of the insured, "we cannot torture the insurance policy language in order to provide [the policyholder] with uninterrupted insurance coverage where there was none." (In *Security*, the Connecticut Supreme Court adopted the *pro rata* method of allocating defense costs "for purposes of allocating costs to the insured for periods during which it was uninsured." However, the court indicated in a footnote: "We do not decide in this case how costs should be allocated if there is uninterrupted coverage." 826 A.2d at 127.) This Court also notes that the *Boston Gas* court mentions that the issues being addressed

9

pertained to allocation of indemnity costs and not defense costs. 910 N.E.2d at 311, n. 38.

Indiana cites *MAJ* as a case applying *Sloan* in a progressive damage situation and still finding no right of contribution for defense costs between insurers which have a duty to defend in their respective policies. Harleysville counters that *MAJ* was unpublished and that it was decided before *Crossmann II*.

United States District Judge Margaret Seymour recently addressed some of these issues in *Liberty Mutual Fire Insurance Co. v. J.T. Walker Industries, Inc*., Civil Action No. 2:08-2043-MBS 2012 WL 3292973 (D.S.C. August 10, 2012):

> Liberty Mutual also argues that *Sloan* is distinguishable because its policies did not insure risks identical to that insured by Zurich. Rather, Liberty Mutual and Zurich each insured different, non-overlapping periods of time during a period of progressive water damage lasting several years. However, under South Carolina law, an insurer's duty to defend is triggered if *any* cause of action in a complaint seeks damages covered by the policy. *See, e.g., Town of Duncan v. State Budget and Control Bd*., 326 S.C. 6, 482 S.E.2d 768, 773-74 (S.C. 1997). Similarly, even though Liberty Mutual's policies would only cover a percentage of the loss (in the underlying lawsuit), this is sufficient to trigger the duty to defend. Once triggered, this duty obliges Liberty Mutual to provide a complete defense.
>
> **Although the South Carolina Supreme Court in *Crossmann II* explicitly adopted a policy of allocating loss among multiple insurance policies based on time on the risk, it did not suggest or imply that an insurer's duty to defend could be allocated in the same way.** Accordingly, this court holds that an insurer is obliged to provide a full defense to its policyholder even if the insurer's policies cover only a portion of the progressive damage underlying the lawsuit. The court expresses no opinion as to whether such an insurer is entitled to any contribution toward defense costs from the other insurers whose policies also cover portions of the same progressive damage.

2012 WL at *16 (emphasis added).

Regarding the meaning of "Identical Risk" in *Sloan*, Harleysville and each of the Fourth Party Defendants provided CGL coverage to a common insured. *Crossmann* does not stand for the proposition that carriers covering progressive damage insure different risks. Instead, *Crossmann*

10

allocates progressive damages from the same risk across multiple policy years. In its holding, the Supreme Court in *Crossmann* states: "We reverse the finding of joint and several liability and find the scope of Harleysville's liability is limited to damages accrued during its 'time on **the** risk." *Crossmann*, 717 S.E.2d at 591. The South Carolina Supreme Court in *Crossmann* did not address the situation presented by several insurers, each with a duty to defend. It simply addressed how to deal with the duty to indemnify. The duty to defend is broader than the duty to indemnify, and there is no indication in *Crossmann* that the Supreme Court would use the "time on risk" test for the duty to defend. Harleysville's Motion for Summary Judgment is denied on this basis as to the duty to defend and for contribution regarding defense costs.

The Court grants the Motions for Summary Judgment by Fourth-Party Defendants Massachusetts Bay, Illinois Union, Liberty Mutual, and Zurich as to the duty to defend and finds no right of pro-rata contribution toward defense costs from these fourth-party defendants to Harleysville.[4]

The Court will discuss below an additional issue peculiar to Indiana Insurance Company.

**Duty to Indemnify Beazer by Indiana Insurance Company**

Harleysville contends that the Indiana policies provided overlapping or concurrent coverage with the Harleysville policies from July 1, 1997 through August 29, 1998. It asserts that when two insurance policies cover the same peril to the same property, the "Other Insurance" provisions in each policy apply to determine how the two insurance companies must contribute to pay for the loss and that the Harleysville policies are excess to the Indiana policies. It asserts that the Indiana policies are primary and must actually be exhausted by payment of $4,000,000, the policy limits, in order for the

---

[4] It is not necessary to discuss the other arguments by the Fourth Party Defendants except for the argument by Indiana Insurance Company regarding the overlapping periods of coverage with Harleysville.

Harleysville policy to pay.

Indiana asserts that Harleysville and Indiana share time on the risk for thirteen buildings from June 1, 1998 to August 29, 1998, but that Harleysville is not entitled to contribution. It contends that Harleysville incorrectly describes the period of overlapping coverage. Also, it asserts that the language of the two policies does not support any contribution claim by Harleysville.

Indiana asserts that the True Blue project was begun by Pinehurst Builders, Inc., which completed eleven of the buildings. The first building was completed on July 31, 1997. Harleysville Mem. in Support, ECF No. 153-1, at 5, n.2. At that time Harleysville was on the risk pursuant to a policy it issued to Pinehurst Builders, Inc. on July 29, 1997. (Harleysville Mem. in Supp., ECF No. 153-1, at 7.) Harleysville correctly points out that Indiana's first of two policies was issued on July 1, 1997. *Id.* However, Indiana's insured was Crossmann Communities, Inc. *Id.* It is undisputed that prior to June 1, 1998, Crossmann Communities, Inc. had nothing whatsoever to do with the True Blue project. On June 1, 1998, Pinehurst Builders, Inc. merged into Crossmann Communities of North Carolina, Inc. *See* Harleysville's Fourth Party Compl., ECF No. 40, ¶¶ 11, 14. Indiana agrees with Harleysville that the Indiana Policies covered the named insured, Crossmann Communities, Inc., and its subsidiary, Crossmann Communities of North Carolina, Inc. Harleysville Mem. in Supp., ECF No.153-1, at 7. Thus, as of the date of the merger (June 1, 1998), Crossmann Communities of North Carolina, Inc. was an Indiana insured and Indiana came on the risk for the True Blue project for the first time. Indiana asserts that it was not exposed to any risk for damages at this project until the contractor became its insured and that did not take place until the merger on June 1, 1998. This Court agrees with Indiana that the correct period of overlapping coverage is therefore June 1, 1998 through August 28, 1998.

Next, the Court must determine whether Harleysville is entitled to contribution from Indiana toward payment of indemnity for the period of June 1, 1998 through August 28, 1998. South Carolina courts have held that "other insurance" clauses "are intended to apportion an insured loss between or among insurers where two or more policies offer coverage of the same risk and same interest for the benefit of the same insured for the same period." *S.C. Ins. Co. v. Fid. & Guar. Ins. Underwriters, Inc.*, 489 S.E.2d 200, 202 (S.C. 1997). Harleysville's "other insurance" clause provides "[i]f there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect it or not." (ECF No. 153-6, at 38). The Indiana policy provides: "If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows: a. Primary Insurance – This insurance is primary except when b. below applies. If this Insurance is primary, our obligations are not affected unless any of the other Insurance is also primary. Then, we will share with all that other Insurance by the method described in c. below." Section b. provides that this insurance is excess over any other insurance that is fire, extended coverage, builder's risk, installation risk or similar coverage for "your work"; fire insurance for rented property; or loss arising from the use of aircraft, autos, or watercraft. Harleysville contends under its "other insurance" clause that its coverage is excess and that Indiana's coverage is primary.[5] Indiana contends that, even if Harleysvile is correct and Harleysville's coverage is "excess" and Indiana's coverage is "primary," it has already exhausted its polices by virtue of the settlement with Beazer. Therefore, no contribution

---

[5] The situation in the case at bar is distinguishable from the one presented in *South Carolina Ins. Co. v. Fidelity and Guar. Ins. Underwriters, Inc.*, 489 S.E.2d 200 (S.C. 1997). In *Fidelity*, the "other insurance" clauses of each policy declared that it should be considered excess to other available coverage.

13

would be owed to Harleysville by Indiana.

Assuming that Harleysville's coverage is excess to Indiana's for the pertinent time period, then it would only be responsible for payment of amounts in excess of the primary carrier's policy limits and would not be entitled to contribution from Indiana. As argued by Indiana, this situation can be analogized to the situation where a policyholder settles with a primary carrier for less than policy limits and then looks to its excess carrier for coverage. Indiana asserts:

> Courts have dealt with this situation by protecting the settling insurer from a contribution claim by the non-settling insurer, but granting to the non-settling insurer a 'settlement credit'– a reduction of the non-settling insurer's own coverage liability . . . In the present case, because Beazer must indemnify Indiana for any sums owed by Indiana to Harleysville, this settlement credit approach is particularly appropriate . . . Harleysville can only be compelled to pay for damages in excess of those that would have been covered by Indiana in the absence of its settlement with the insured.

(ECF No. 173, at 13).

Harleysville responds as follows:

> Harleysville believes that the appropriate result would be to allocate to Indiana the amount of damages allotted to the overlapping period of coverage until its policy limits are exhausted. However, Harleysville is not necessarily opposed to obtaining a "settlement credit", although it is not clear from Indiana's Memorandum exactly what the settlement credit would consist of.

(ECF No. 170, p. 7, note 4).

In *Koppers Co., Inc. v. Aetna Cas. & Surety Co.*, 98 F.3d 1440, 1454 (3d Cir. 1996), the Third Circuit predicted that the Pennsylvania Supreme Court would "adopt the widely-followed rule that the policyholder may recover on the excess policy for a proven loss to the extent it exceeds the primary policy's limits" and that "settlement with the primary insurer functionally 'exhausts' primary coverage and therefore triggers the excess policy-though by settling the policyholder loses any right to coverage of the difference between the settlement amount and the primary policy's limits." The court cited Barry

R. Ostrager & Thomas R. Newman, HANDBOOK ON INSURANCE COVERAGE DISPUTES § 13.04, at 575-77 (7th ed. 1994)(citing, *inter alia*, *Stargatt v. Fidelity & Cas. Co.*, 67 F.R.D. 689, 691 (D.Del. 1975). To require the insured "actually to collect the full amount of the [primary] policies . . . in order to 'exhaust' that insurance. . . seems unnecessarily stringent."

This Court agrees with the above approach. Even if Harleysville is correct and Indiana's policy is deemed primary, its limits have been exhausted by the settlement with Beazer. However, Harleysville's policy does not come into play until the damages exceed the policy limits of Indiana for this overlapping time period. Therefore, the motion for summary judgment by Indiana is granted as to Harleysville's claim for indemnity for the period of overlapping coverage.

### *Conclusion*

The Court denies the Motion for Summary Judgment by Fourth Party Plaintiff Harleysville Mutual Insurance Company (ECF No. 153) and grants the Motions for Summary Judgment by Indiana Insurance Company (ECF No. 150), Liberty Mutual Insurance Company (ECF No. 149), Massachusetts Bay Insurance Company (ECF No. 151), Illinois Union Insurance Company (ECF No. 154), and Zurich American Insurance Company (ECF No. 157). The Court declares that the Fourth Party Defendants are not obligated to pay a pro-rata time-on-risk portion of defense costs incurred and paid by Harleysville in the underlying lawsuit, *True Blue Golf & Racquet Resort Homeowners' Association, Inc. and True Blue Golf & Racquet Resort Horizontal Property Regime, vs. Beazer Homes Corp., Inc. and Structure Home Builders, LLC*, Civil Action No. 2009-CP-22-00912. The Court further declares that Harleysville is not entitled to indemnity from Indiana for the period of overlapping coverage. Further, without objection, Steadfast Insurance Company and American Guarantee and Liability Insurance Company as substituted for Zurich Insurance Company. All of the Fourth-Party Defendants

are dismissed pursuant to this order.

        **AND IT IS SO ORDERED**.

<u>s/ R. Bryan Harwell</u>
R. Bryan Harwell
United States District Judge

Florence, S.C.
March 27, 2013