IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Crossman Communities of | ) | Civil Action No. 4:09-1379-RBH |
| North Carolina, Inc.; | ) | |
| Crossmann Communities, Inc.; | ) | |
| Beazer Homes Investment Corp.; | ) | |
| Beazer Homes Corp., Inc., | ) | |
| | ) | **O R D E R** |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Harleysville Mutual Insurance | ) | |
| Company, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Before the Court is [358] Motion for Attorney's Fees in this action by the plaintiffs, hereinafter

referred to as "Beazer". The defendant "Harleysville" filed a response in opposition to the motion, and

Beazer filed a Reply. The motion is ripe for disposition.[1]

The parties filed motions to seal Beazer's memorandum in support of the motion for attorney's

fees, Harleysville's objection to the motion for attorney's fees; the affidavits of Martin M. McNerney,

Brett A. Steele, Robert M. Horkovich, and Eric J. Tidd; all King & Spalding invoices in the *True Blue*

*Coverage Case*, attached as Exhibit A to the affidavit of Martin M. McNerney; and all Elmore,

Goldsmith, P.A. and Elmore Wall, P.A. invoices in the *True Blue Coverage Case*, attached as Exhibit

A to the affidavit of L. Franklin Elmore, on the basis that they contain confidential and proprietary

information regarding hourly rates, fee structures, and discounts negotiated. The Court granted the

---

[1] Under Local Rule 7.08, "hearings on motions may be ordered by the Court in its discretion.
Unless so ordered, motions may be determined without a hearing."

1

motions on a temporary basis in order to allow interested parties to object to the motions to seal.  No

objections have been received by the Court.  Therefore, the motions to seal [ECF No. 357 and 361] are

granted on a permanent basis.  However, this order will not be sealed.  The parties have furnished the

sealed documents to the Court *in camera*, and the Court has reviewed them before ruling on the motion.

**Counsel for the parties shall file under seal on the docket the documents which were submitted

to the Court *in camera*.**  These include Beazer's Memorandum in Support of its Motion for Attorney's

Fees; the affidavit of Martin M. McNerney with attached exhibits; the affidavit of Brett A. Steele; the

affidavit of Robert M. Horkovich; the affidavit of Eric J. Tidd; all invoices attached as Exhibit A to the

affidavit of L. Franklin Elmore; and Harleysville's Objection to Beazer's Motion for Attorney's Fees.

The Court must now turn to the reasonableness of the Beazer request for attorneys' fees and

costs.  Beazer requests the Court to award $1,110,483.32 in attorney's fees and costs for this action.

(The total amount of costs requested is $119,330.27.[2]  The total amount of fees requested is

$991,153.05.)  Beazer also requests the Court to award it reasonable attorney's fees and costs for

responding to Harleysville's post-judgment motion and attorney's fees and costs for the appeal to the

Fourth Circuit Court of Appeals.

In *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), the Fourth Circuit recently summarized

the proper procedure and standard for making an attorney's fee award as follows:

> The proper calculation of an attorney's fee award involves a three-step process.  First,
> the court must "determine the lodestar figure by multiplying the number of reasonable
> hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560
> F.3d 235, 243 (4th Cir. 2009).  To ascertain what is reasonable in terms of hours
> expended and the rate charged, the court is bound to apply the factors set forth in

---

[2] Beazer has represented to the Court that Appendix A to its Reply (ECF No. 366) contains its itemized costs.  *See also*, the affidavits of Elmore and McNerney indicating the total costs incurred by each firm.  The Court has reduced this amount by $17,298.86, as indicated later in this order.

> *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974) . . .
> Next the court must "subtract fees for hours spent on unsuccessful claims unrelated to
> successful ones." *Id*. at 244.  Finally, the court should award "some percentage of the
> remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id*.

To determine the reasonable number of hours and the reasonable rate to use in calculating the

lodestar, the Court is guided by twelve non-exclusive factors.  These factors, which have been approved

by the Supreme Court and embraced by the Fourth Circuit are:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the level of skill required to perform the legal service
> properly; (4) the preclusion of employment by the attorney due to
> acceptance of the case; (5) the customary fee; (6) whether the fee is
> fixed or contingent; (7) the time limitations imposed by the client or the
> circumstances; (8) the amount involved and the results obtained; (9) the
> experience, reputation, and ability of the attorneys; (10) the
> "undesirability" of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar
> cases.

*Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 175 (4th Cir. 1994) (citing *Johnson v. Georgia*

*Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974)); *see Blanchard v. Bergeron,* 489 U.S. 87, 91 n.5

(1989).  These factors were first adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.,* 577 F.2d

216, 226 (4th Cir. 1978).[3]  In more recent cases, some courts restate the sixth factor as relating to

counsel's expectations at the outset of the litigation. *See Brodziak v. Runyon,* 145 F.3d 194, 196 (4th

Cir. 1998) (quoting *EEOC v. Service News, Co.,* 898 F.2d 958, 965 (4th Cir. 1990)).  Although the

Court considers all of the factors, they need not be strictly applied in every case inasmuch as all of the

factors are not always applicable. *Service News,* 898 F.2d at 965.

**Step One:  Reasonable Number of Hours and Reasonable Hourly Rate**

---

[3]The local rules in this District require that "[a]ny petition for attorney's fees . . . comply
with the requirements set forth in *Barber v. Kimbrell's, Inc.* . . . ." Local Rule 54.02 (D.S.C.).

3

To establish the number of hours reasonably expended, the attorney "should submit evidence supporting the hours worked . . ." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). The number of hours should be reduced to exclude "hours that are excessive, redundant, or otherwise unnecessary" in order to reflect the number of hours that would properly be billed to the client. *Id.* at 434.

The hourly rates included in a request for attorneys' fees must also be reasonable. *Hensley,* 461 U.S. at 433. A reasonable hourly rate is defined as "the 'prevailing market rate[] in the relevant community.'" *Rum Creek Coal Sales,* 31 F.3d at 175. The relevant community for determining the prevailing market rate is generally the community in which the court where the action is prosecuted sits. *Id.* "In circumstances where it is reasonable to retain attorneys from other communities, however, the rates in those communities may also be considered." *Id.* This determination is fact intensive and the Court may look to what attorneys earn from paying clients for similar services in similar circumstances. *See Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984). "While evidence of fees paid to attorneys of comparable skill in similar circumstances is relevant, so too is the rate actually charged by the petitioning attorneys when it is shown that they have collected those rates in the past from the client." *Rum Creek Coal Sales,* 31 F.3d at 175 (citing *Gusman v. Unisys Corp.,* 986 F.2d 1146 (7th Cir. 1993)).

In this case, South Carolina counsel for Beazer, the Elmore Goldsmith law firm, presented billing records showing that they spent 350.3 hours of attorney time and 353.55 hours of paralegal time on this coverage case. *Pro hac* counsel King & Spalding of Washington, DC, presented billing records showing that King & Spalding, spent 1627.70 hours of attorney time working on this case and 439.1 hours of paralegal and support staff time. Beazer's claimed attorney time was therefore 1978 hours of total attorney time and 792.65 of paralegal and support staff time. In evaluating whether these hours were reasonably expended and whether the hourly rates were reasonable, the Court addresses the

relevant factors below.

### 1. Time and Labor Required

This lawsuit was initiated in 2009 by Cincinnati Insurance Company against Beazer and its related entities. In October of 2009, Beazer filed a third party complaint against Harleysville. Harleysville then filed fourth party complaints for contribution against eight (8) insurance companies with whom Beazer had previously settled. The case was stayed from May 4, 2011 to October 12, 2011 due to the pendency of *Crossmann Communities of North Carolina, Inc. v. Harleysville Mutual Insurance Co.*, 717 S.E.2d 589 (S.C. 2011) and from September 20, 2012 to December 5, 2012, pending mediation of the underlying state court action. Motions for summary judgment were filed, and this Court issued an order granting in part and denying in part Beazer's motion and denying Harleysville's motion. The court also granted the motions for summary judgment by the fourth party defendants.

Beazer indicates that it is not asking for an attorney's fee award for Elmore Goldsmith's time before November 2, 2009 because a separate billing file was not opened for this case until then. The first time entry for which King & Spalding seeks an award is August 20, 2009. The last time entry submitted by Elmore Goldsmith was September 30, 2013; the last time entry submitted by King & Spalding was August 27, 2013. The trial in this case was held on August 12 and 13, 2013. The Court entered its judgment on September 27, 2013. A post trial motion was filed by Harleysville on October 25, 2013. Beazer filed a response in opposition on November 12, 2013. Beazer also filed an appeal of this court's judgment. This court entered an order on January 8, 2014, granting in part and denying in part Harleysville's post trial motion. In that order, the Court reduced the indemnity award and further elaborated on its findings regarding the attorney's fees in the underlying action.

The time and labor required to litigate this case have been substantial due to the nature of this

litigation. Further, this has been a long, complex case. The record contains many motions, pretrial and post trial, each of which has been fully briefed. The bench trial of the case took two days.

Harleysville asserts that the lawyers and legal professionals at Elmore Goldsmith and King & Spalding expended more hours than reasonably necessary to litigate the duty to defend issues. It contends that twenty-five (25) different timekeepers from King & Spalding and fourteen (14) timekeepers from Elmore Goldsmith billed time on this case. Beazer responds that it only seeks to recover for the time of eleven (11) timekeepers at King & Spalding and nine (9) timekeepers at Elmore Goldsmith. The Court does not find this to be unreasonable, as the work on the case was complex and spanned some four years.

Harleysville also contends generally that many bills contain duplicative billing and vague entries. However, Harleysville does not point to any specific instances of this. Therefore, no reductions will be made on this basis.

Beazer indicates that the request for attorneys' fees does not include time entries related to Cincinnati. Further, Elmore states in his affidavit that "time entries on the invoices depicting work on the coverage case that was not expressly limited to either Cincinnati or Harleysville issues have been reduced by 50 percent to account for the possibility that a portion of those tasks could be related to enforcing Cincinnati's duties to Beazer." (ECF No. 358-1, p. 4, ¶ 8) The Court finds that this is a fair method of ensuring that Harleysville does not pay Beazer's costs relating to Cincinnati.

Harleysville also argues that the fee award should not include the time spent on preparing motions in limine and other motions that it describes as unsuccessful. When a movant has pursued both successful and unsuccessful claims, "the most critical factor . . . is the degree of success obtained." because when a movant has achieved only partial or limited success, the product of hours reasonably

6

expended on the litigation as a whole may be an excessive amount." *Brodziak,* 145 F.3d at 196-97

(quoting *Hensley,* 461 U.S. at 436). In determining whether to reduce the compensable hours, the Court

must first identify the relationship between the successful and unsuccessful claims. If the claims are

based on different facts and legal theories, the movant should not be compensated for time spent

pursuing the unsuccessful claims because that effort was not "expended in pursuit of the ultimate result

achieved." *Hensley,* 461 U.S. at 435. However, "[i]n [some] cases, the [movant's] claims for relief will

involve a common core of facts or will be based on related legal theories. Much of counsel's time will

be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on

a claim-by-claim basis." *Id.* In such a case, "the district court should focus on the significance of the

overall relief obtained by the [movant] in relation to the hours reasonably expended on the litigation."

*Id.* Here, the motions referenced by Harleysville do not deal with unsuccessful claims but rather

arguably unsuccessful motions. Therefore, the Court will not reduce the hours claimed by the time

spent on those motions.

Harleysville also contends that the fees and costs being sought improperly include time spent

in preparing pleadings filed on behalf of some of the Fourth Party Defendants.[4] Beazer responds that

the confidential settlement agreements between Beazer and the Fourth Party defendants obligated

Beazer to reimburse the Fourth Party defendants for the costs associated with Harleysville's Fourth

Party Complaint. It appears that Beazer has ignored the Court's previous ruling in this regard. In its

---

[4] The affidavit of L. Franklin Elmore states that "time entries related to tasks other than enforcing Harleysville's duties to Beazer have been redacted" and time entries that are not clear whether they pertain to Cincinnati or Harleysville have been reduced by 50 percent. (ECF No. 358-1, p. 4) The affidavit does not make clear whether Beazer sought to recover for work performed on the Fourth Party claims. However, Harleysville's objections to the motion for attorney's fees (ECF No. 362, p. 17) indicates that the invoices include work on fourth party claims. In Beazer's Reply (ECF No. 366, p. 6), Beazer clarifies that it still seeks an award for the time spent on the fourth party claims.

Findings of Fact and Conclusions of Law (ECF No. 350), this Court already found that "this action did not just involve the dispute between Beazer and Harleysville. It was initiated by Cincinnati and also involved several other carriers. Therefore, any award of attorney's fees for this action should only include work performed in relation to the dispute between Beazer and Harleysville." (ECF No. 350, p. 53, note 16) The Court reiterates this ruling here.

In addition, as noted by Harleysville, it was not a party to the agreements between Beazer and the other insurance companies and should not be required to pay Beazer's attorney's fees in connection with those agreements. Neither party has segregated for the court the specific billings for time spent on the fourth party claims. However, Beazer has the burden of proof, and Harleysville has challenged the charges. It is not the court's duty to comb the record to determine the exact number of hours spent by Beazer on the fourth party claims. Therefore, with no help from the parties, the court is forced to concoct a method of formulating the number of hours that should be deducted.

In reviewing the invoices, it appears that roughly two-thirds (2/3) of the bills were for time after March of 2013, when the fourth party defendants were dismissed and no longer parties and that one-third (1/3) was for time while the fourth party defendants were parties. Regardless, the Court believes that this is a fair estimation of the time that was or reasonably should have been spent. Again, Beazer has the burden of proof and its failure to segregate the time spent on the fourth party claims leaves this Court with a difficult task. In fairness, some portion of the time spent before March, 2013 when the fourth party defendants were still parties was spent on other aspects of the case that did involve Harleysville. The Court notes that this case was actually three cases in one: Cincinnati vs. Beazer (for which deductions were already made by Beazer); Beazer vs. Harleysville; and Harleysville vs. the fourth party defendants. The Court considered reducing the total time by one-third to account for the

time spent while the fourth party claims were pending.  However, because equitably some time was obviously spent that overlapped with the time involving Harleysville, the Court will make a 1/4 reduction in time rather than a 1/3 reduction.  Therefore, the Court will reduce the total requested time by one-fourth, representing the work on the fourth party claims.

Harleysville has objected to the inclusion in Beazer's costs of the bills of Ms. Christine Companion Varnado and the Seibels Law Firm, on the basis that this law firm represented Massachusetts Bay Insurance Company, one of the fourth party defendants.  The Court agrees that, consistent with its previous order, these costs should not be awarded.  Therefore, the Court deducts $17,298.86 from the costs to be awarded.

Harleysville contends that the award should not include time spent on tasks related to its indemnity obligations, only its duty to defend.  While this may be an unduly narrow reading of the relevant case law[5], this Court's Findings of Fact and Conclusions of Law stated that Beazer was entitled to recover its reasonable attorney's fees and costs incurred "in this action to enforce Harleysville's duty to defend."  (ECF No. 350, p. 53) In addition, the Court entered judgment "in favor of Beazer and against Harleysville for Beazer's attorneys' fees and costs incurred in this action to enforce Harleysville's duty to defend."  *Id*.  Beazer did not file a motion to alter or amend.  Regardless, clearly the vast majority of the recovery by Beazer concerned the attorney's fees for the underlying action. The amount of the indemnity award was very small compared to the amount of attorney's fees awarded for the breach by Harleysville of its duty to defend.  While it would be difficult to determine which time entries pertained solely to the duty to indemnify as opposed to the duty to defend,  Harleysville asserts

---

[5] *Hegler v. Gulf Ins. Co.*, 270 S.C. 548, 243 S.E.2d 443 (1978); *Berenyi, Inc. v. Landmark Am. Ins. Co.*, C.A. No. 2:09-cv-01556-PMD, 2010 WL 233861, *10 (D.S.C. Jan. 14, 2010).

that all work by Beazer's counsel associated with Mr. Rick Moore and/or the damages and repairs to the buildings at the True Blue resort should not be awarded, as the time was related to indemnity and was not related to Harleysville's defense obligations. Beazer asserts that the testimony and affidavit of Moore did relate to the duty to defend. Beazer argues that Harleysville had taken the position that it had no duty to defend because there was no possibility that Harleysville was obligated to indemnify Beazer on the basis there was no property damage caused by an occurrence. Beazer contends that the Moore testimony related to proving its position in this regard. The Court finds that the attorney time and costs relating to Moore were at least somewhat pertinent to the duty to defend.

With little or no help from counsel as to the number of hours spent concerning the duty to indemnify, the Court will attempt to come up with an equitable way to deduct the time spent on the indemnity obligation. Obviously, the evidence relating to the duty to defend and duty to indemnify was somewhat related. Based on its experience with this case, the Court deducts 10% of the timekeepers' hours. This should fairly account for any time spent on issues relating solely to the duty to indemnify.

These above stated equitable reductions to the requested hours are shown by the calculations below:

**Partners Elmore, Goldsmith, McNerney**                    **842.3 hours requested**

**Less 1/4 (25%) reduction for time on fourth party claims**    **-210.58 hours**
                                                                **631.72 hours**
**Less 10% for work on indemnity**                              **- 63.00 hours**
                                         **Total:**             **568.72 hours**


**Associates Johnson, Lankford, Rubenstein,**
**and Sullivan**

                                                               **1109.3 hours requested**
 **Less 1/4 (25%) reduction for time on fourth party claims**    **-  277.33 hours**
                                                                **831.97 hours**
**Less 10% for work on indemnity**                              **-  83     hours**

|  | 748.97 hours |
|---|---|
| ***Paralegals N. Greene, Rottner, Williamson, Sheung, Conley, Fiorillo, Parker, Alexander, and Harper*** | |
|  | **773.85 hours requested** |
| **Less 1/4 (25%) reduction for time on fourth party claims** | **-193.46 hours** |
|  | **580.39 hours** |
| **Less 10% for work on indemnity** | **-58.00 hours** |
|  | **522.39 hours** |
| ***Partner Haldrup*** | **12.80 hours requested** |
| **Less 1/4 (25%) reduction for time on fourth party claims** | **-3.2 hours** |
|  | **9.6 hours** |
| **Less 10% for work on indemnity** | **- .96 hours** |
|  | **8.64 hours** |
| ***Associate Kelley*** | **13.60 hours requested** |
| **Less 1/4 (25%) reduction for time on fourth party claims** | **-3.4 hours** |
|  | **10.20 hours** |
| **Less 10% for work on indemnity** | **- 1.02 hours** |
|  | **9.18 hours** |
| ***Paralegals F. Greene, McBride*** | **18.80 hours requested** |
| **Less 1/4 (25%) reduction for time on fourth party claims** | **- 4.7 hours** |
|  | **14.10 hours** |
| **Less 10% for work on indemnity** | **-1.4 hours** |
|  | **12.70 hours** |

**Attorney Time for Responding to Harleysville's Post-Trial Motion.** Beazer has also requested the Court to award a reasonable attorney's fee for its counsel's work in reviewing Harleysville's post trial motion and for filing a response in opposition to Harleysville's post trial motion. No supplemental information has been filed or was received by the Court showing the time spent in responding to the motion. The motion for attorney's fees has been pending since November 12, 2013, and the Court's

11

ruling on the post trial motion was on January 8, 2014. Therefore, Beazer has had ample time during which to submit additional documentation to the Court.

Beazer filed a twenty-four (24) page memorandum in opposition to Harleysville's post trial motion. The Court notes that many of the arguments made are simply reiterating earlier arguments. In reviewing the record and Beazer's response to the post-trial motion (ECF No. 356), the Court finds that eight hours of partner time is reasonable for preparation of the response.

| | |
|---|---|
| **McNerney and Elmore Time for Responding to Post-Trial Motions** | **8 hours** |
| **Less 10% for indemnity** | **-.8 hours** |
| | **7.2 hours** |

*2. Novelty and Difficulty of the Questions Presented by the Lawsuit* and *3. Level of Skill Required to Perform the Legal Service Properly*

This case involved complicated claims dealing with the duties of an insurance carrier. It also required an understanding of the complex underlying construction litigation. The case involved novel issues relating to the anti-assignment clause and application of South Carolina insurance law to the policy's impaired property exclusion and its requirements of "property damage" and an "occurrence". The case also involved the developing law in South Carolina relating to the "time on risk". *See Crossmann Communities of North Carolina, Inc. v. Harleysville Mutual Insurance Co.*, 717 S.E.2d 589 (S.C. 2011). Another complex issue related to the possible effect of the collateral source rule on the attorney's fee award for the underlying action and the effect of Beazer's settlements with other insurers.

*4. Preclusion of Other Employment*

Obviously, a significant amount of time was required from the lawyers assigned to the case. Time spent on this case meant less time for development of other clients' cases. However, counsel for Beazer indicate that they did not turn down any specific work as a result of their work on this case.

### 5. The Customary Fee

Mr. Elmore of Elmore Goldsmith states that the firm customarily charges other clients in similar cases rates equal to or higher than the rates charged to Beazer. He also indicates that the rates charged to Beazer are 25 percent lower than their standard rates. Mr. McNerney of King & Spalding states that King & Spalding has a long working relationship with Beazer and that Beazer has paid the firm substantially the same hourly rates as were charged in this case. He also states that his firm does research on appropriate hourly rates supported by the market and that the rates charged to Beazer "are consistent with, and sometimes lower than, hourly rates we charged to clients other than Beazer for similar insurance coverage litigation work, in part because not all clients had negotiated discounts off King & Spalding 's standard rates similar to Beazer." Declaration of Martin M. McNerney, p. 7.

The affidavit of Mr. Elmore reflects rates charged to Beazer of $300 per hour for partners Elmore and Goldsmith; $250 per hour for partner Haldrup; $225 per hour for associate Sullivan; $175 per hour for associate Kelley; and paralegal hourly rates between $95 and $125. (ECF No. 358-1, p. 4) Harleysville does not appear to object to the reasonableness of the hourly rates charged by Mr. Elmore's firm. *See* Affidavit of Eric K. Englebardt, ECF No. 363, submitted by Harleysville stating that, in his opinion, "the prevailing market rate for experienced attorneys who represent parties in complex insurance coverage disputes in South Carolina is between $250 and $300 per hour. The highest attorney rate of Elmore's firm in this case (pursuant to the discount negotiated by Beazer) was $300.

Beazer also submitted the affidavit of David B. Miller, a partner in the Bellamy Law Firm in Myrtle Beach, South Carolina who has practiced law for over twenty (20) years. He worked with Mr. Elmore and several of his colleagues at Elmore Goldsmith on cases, including serving as co-counsel

13

in the underlying *True Blue* lawsuit.  He states that, in his opinion, the hourly rates charged are reasonable hourly rates providing construction litigation expertise and serving as local counsel in insurance coverage litigation in South Carolina.  (ECF No. 358-2, p. 3)

Based on (1) the Court's own knowledge of hourly rates in this District; (2) the evidence submitted by Mr. Elmore via the Miller affidavit and by Harleysville via the Englebardt affidavit; (3) the attorneys' customary fees; (4) the attorneys' experience, reputation, and ability; and (5) awards in similar cases[6], the Court finds that the hourly rates documented by Mr. Elmore and reflected in the billing records of Elmore Goldsmith are the prevailing market rates for this type of case in the District of South Carolina.

The hourly rates charged by McNerney, a partner at King & Spalding ranged from $581.50 to $715.50 during this lawsuit.  The rates of non-partner attorneys ranged from $353.89 to $445.50 per hour.  The rates of non-attorney support personnel ranged from $98.40 to $220.50.  Harleysville contends that the hourly rates of King & Spalding are higher than and not consistent with the prevailing market rates in South Carolina and that the issues in the case could have been handled by experienced insurance litigation counsel in South Carolina.  Beazer, on the other hand, contends that it was reasonable for Beazer to retain King & Spalding in this litigation because it has retained the firm in insurance recovery cases since 2004 in South Carolina and other states.  Beazer points out that Harleysville also retained counsel from outside South Carolina in this case.

Beazer submits the affidavit of Brett A. Steele, who is employed as Compliance Officer and Associate General Counsel for Beazer Homes Corp.  One of his job duties is involvement with Beazer's

---

[6] *See, e.g.,* cases cited by Harleysville where courts in the District of South Carolina have approved fees between $200 and $300 per hour in various types of civil cases. (ECF No. 362, p. 13)

litigation nationally.  He states: "Based on my experience as an attorney and my work with Beazer, the standard hourly rates charged by King & Spalding's attorneys and support staff performing insurance coverage and recovery work are comparable to the rates charged by other attorneys and support staff at other firms with similar litigation and appellate experience in the specialty field of insurance coverage and recovery, representing corporate policyholders.  Further, with respect to King & Spalding, Beazer had negotiated a ten (10) percent discount off that Firm's standard hourly rates for all attorneys and support staff."  Affidavit of Steele, p. 6.

Beazer also presented the affidavit of Robert M. Horkovich, an insurance litigator at a national law firm, Anderson Kill P.C.  He states that he has worked closely on other insurance coverage litigation cases with McNerney and Taylor Lankford, an associate at King & Spalding and that their hourly rates are comparable to rates charged by similarly experienced insurance attorneys at other firms where he has worked.  Those rates are $600-715 per hour for McNerney between 2009 and 2013 and $355-$405 for Lankford for 2012-2013.

Beazer also presented the affidavit of Eric J. Tidd, Beazer's Financial Analysis Manager.  He states that Beazer researches the U.S. market for legal services and in places where King & Spalding has offices and determines its billing structure accordingly.  However, he also states that individual clients on occasion negotiate discounts with King & Spalding.  He indicates that Beazer negotiated a 10% discount off of the firm's standard hourly rates.

The Fourth Circuit's *Rum Creek* case cites *National Wildlife Federation v. Hanson*, 859 F.2d 313 (4th Cir. 1988) in regard to the question of the reasonableness of retaining counsel from other communities.  In *National Wildlife*, the Fourth Circuit found that the closest counsel geographically to the lawsuit "with the requisite expertise in complex environmental litigation and the willingness to

forgo compensation temporarily and perhaps permanently" was in Washington, D.C. The court also found that local counsel in Raleigh, North Carolina was unable to take the case, and the efforts to retain the Sierra Club Defense Fund were unsuccessful. Therefore, the court found that the district court properly approved Washington, DC rates for a public interest law firm in DC for a case in the Eastern District of North Carolina. The court stated:

> The community in which the court sits is the appropriate starting point for selecting the proper rate. . . Nevertheless, "[t]he complexity and specilized nature of a case may mean that no attorney, with the required skills, is available locally." *Chrapliwy v. Uniroyal, Inc*., 670 F.3d 760, 768 (7th Cir. 1982). In *Chrapliwy*, the court identified two questions to be asked in determining whether an exception to the general rule should be granted: are services of like quality truly available in the locality where the services are rendered; and did the party choosing the attorney from elsewhere act reasonably in making that choice? 670 F.2d at 769.

*National Wildlife*, 859 F.2d at 317.

This Court believes that services of like quality to King & Spalding are available in South Carolina. The issues in this case are not so unusual as to require the services of out-of-state counsel. **Therefore, the hourly rate for purposes of the attorney's fee award for the services of attorney partners at King & Spalding is reduced to $300. The hourly rate for attorney associates at King and Spalding is reduced to $225 per hour. The hourly rate for paralegals at King and Spalding is reduced to $125 per hour. The Court accepts the hourly rates of the attorneys and paralegals at the Elmore Goldsmith firm as submitted.**

### 6. Attorney's Expectations at the Outset of the Litigation

This case is not contingency based. Counsel expected that Beazer would pay them the negotiated hourly rates.

### 7. The Time Limitations Imposed by the Client or Circumstances

This case involved several periods of concentrated work, including the summary judgment

16

briefing, trial preparation, trial, and preparation of proposed orders.

### 8. The Amount Involved and the Results Obtained

The indemnity award is small due to the law pertaining to the time on risk. The attorneys' fees awarded for work on the underlying state court action were substantial. In that award, this Court accepted the rates of counsel as reasonable but reduced the amounts requested by ½ of the amount which Harleysville paid to attorney Stephen Brown and for the amounts the court found were already paid by other insurance companies toward defense costs.

### 9. Experience, Reputation, and Ability of the Attorneys

Counsel for Beazer have many years of experience as insurance and construction litigators. Regarding their abilities, the Court has, among other things, reviewed the many filings that they submitted to the Court, heard the arguments made, and observed their conduct at trial. The Court finds that these factors weigh in favor of approval of a reasonable amount of attorneys' fees in this action.

### 10. Undesirability of the Case

This factor appears to have no bearing on the reasonableness of the fees in this case.

### 11. Nature and Length of the Attorney's Professional Relationship with the Client

Both law firms have represented Beazer on a long-term basis.

### 12. Fee Awards in Similar Cases

Beazer has not provided the Court with examples of fee awards in similar cases. Harleysville also has not and has only cited cases for the proposition that rates of $300 per hour or less have been awarded. The Court notes that it has limited the hourly rate to a maximum of $300.00. Harleysville also advocates not more than $362,666, with which this Court's ultimate award is consistent. While there are contract and commercial litigation cases where courts have awarded between $192,000 and

17

$748,703 in attorney's fees, *See Palmetto Health Credit Union v. Open Solutions, Inc.*, No. 3:08-cv-3848, 2011 WL 11702 (D.S.C. January 4, 2011), citing *GTR Rental, LLC v. DalCanton*, 547 F.Supp.2d 510, 524 (D.S.C. 2008) and *Summers v. Adams*, No. 3:08-2265-CMC, 2010 WL 2179571, at *7 (D.S.C. May 26, 2010), neither party has submitted recent cases involving fee awards in similar cases such as this.

     **Lodestar Amount.** The Court thus calculates the lodestar amount as follows:

**$300 per hour partners Elmore, Goldsmith, McNerney**    **575.92 hours**

    **(Includes time on post trial motion)**    **x $300.00 = $172,776**

**$225 per hour associates Johnson, Lankford, Rubenstein,**

**and Sullivan**    **748.97 hours**

    **x 225 = $168,518.25**

**$125 per hour paralegals N. Greene, Rottner, Williamson,**

**Sheung, Conley, Fiorillo, Parker, Alexander, and Harper**    **522.39 hours**

    **x 125= $65,298.75**

**$250 per hour partner Haldrup**    **8.64 hours**

    **x 250= $2160.00**

**$175 per hour associate Kelley**    **9.18 hours**

    **x 175 = $1606.50**

**$95 per hour paralegals F. Greene, McBride**    **12.7 hours**

    **x 95 = $1206.50**

This results in a total lodestar amount of **$411,566 in attorney's fees plus costs of $102,031.41.**

     **Step Two. Unsuccessful Claims.** The Court now turns to the second step in making an

attorney's fee award, deducting fees charged in connection with any unsuccessful claims. "Where the [movant] has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440. "[T]he district court may simply reduce the award to account for the limited success." *Signature Flight Support Corp. v. Landow Aviation L.P.,* 730 F. Supp. 2d 513, 528 (E.D. Va. 2010) (quoting *Hensley,* 461 U.S. at 436-37). Here, Harleysville contends that the court should reduce the award for "unsuccessful motions" such as motions in limine, motion to bifurcate, and objection to realignment of the parties. However, as discussed above, this work would not be considered unsuccessful claims, so no reduction is needed.

**Step Three.  Percentage of Remaining Amount Depending on Degree of Success.**  The last step of the analysis is to award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.  Beazer's third-party complaint primarily requested damages for breach of the insurance contract and a declaratory judgment that Harleysville had a duty to defend and indemnify Beazer (jointly and severally) with respect to the True Blue HOA claims.  It also requested attorneys' fees for this action.  This Court granted Beazer's motion for summary judgment on the duty to defend and denied Harleysville's motion for summary judgment.  This Court rejected Harleysville's "named insured" argument based on the anti-assignment clause in the policy.  The Court also found that the impaired property exclusion did not bar coverage at that stage of the case.  The Court reserved for trial the determination of the amount of the reasonable attorney's fees that should be awarded as damages for the breach of contract.  In the Findings of Fact and Conclusions of Law issued after the bench trial, this Court awarded Beazer $1,087,998 for defense costs in the underlying action for breach of the duty to defend.  The court also awarded reasonable attorney's fees and costs for this action in an

amount to be determined. Finally, the court entered judgment in the amount of $16,473.34, which the court found to be Harleysville's time on risk indemnity obligation under the policy. In the Order granting in part Harleysville's motion to amend, the indemnity portion of the order was reduced to $3565.

Harleysville contends that, while Beazer was successful in obtaining a declaration that it breached its duty to defend, the amount of attorney's fees awarded was a good but not great result. In particular, it asserts that the court awarded less than one-half of the total fees and costs Beazer had sought. Beazer counters that the court found its fees and costs incurred in the True Blue lawsuit in the amount of $2,493,131 to be reasonable and that the court's reduction was based on an allocation of $1,275,380 from Beazer's settlements with other carriers.

Harleysville also asserts that a full attorney's fee award for this DJ action would be unreasonable because of the small indemnity award based on Harleysville's time on the risk. Harleysville requests the court to award no more than $362,666, or one-third of the judgment entered for defense costs in the underlying action.

Beazer sought approximately $2.5 million in unreimbursed attorney's fees and, while it was highly successful, the Court did reduce their requested attorney's fees for the underlying action by roughly $1.4 million due to credits for settlements with other carriers and a portion of attorney Brown's fees. *See* Findings of Fact and Conclusions of Law, ECF No. 350, p. 50-51. This Court awarded Beazer $1,087,998, representing attorneys' fees in the underlying lawsuit, in compensation for Harleysville's breach of its duty to defend. The small indemnity award was based upon the "time on risk" analysis which was adopted by state courts during the pendency of this action.

Under the circumstances of the case as described above, while Beazer received a substantial

award, the Court believes that a reduction of the lodestar fee amount by 25 percent is appropriate, taking into account that the Court did not allow a windfall or duplicate recovery to Beazer and deducted from the award those amounts Beazer had previously received from other carriers for defense costs.

A reduction of the lodestar amount by 25% results in an attorney's fee award of $308,674.50. The Court notes that this amount is below the maximum fee amount that Harleysville argues should be awarded ($362,666 or one-third of Beazer's recovery).

The request for an award of attorney's fees and costs for the appeal is denied without prejudice as premature.

## CONCLUSION

The Clerk of Court is hereby **DIRECTED** to enter judgment for Plaintiffs for attorney's fees and costs in this declaratory judgment action in the amount of $410,705.91, representing attorney's fees of $308,674.50 and costs of $102,031.41.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

May 23, 2014
Florence, South Carolina

21